Kaysen Ross is here for the appellant, the warden. Andrew Mueller is here for Ms. Fleming. And Mr. Ross, you may begin when you're ready. Thank you. Thank you, Mr. Ross, for the work of the Federal Commercial Institution of Tallahassee. This report should have dismissed Fleming's claims against the warden alleging unconstitutional conditions of confinement in violation of the Eighth Amendment. The court's decision in John P. Terry, issued just on Tuesday and to which we apprised the panel yesterday, makes the error in that holding clear. And this court can consider that question on an interlocutory appeal of the denial of a motion to dismiss under the collateral order doctrine. And that's because the order satisfies each of the three factors that the Supreme Court articulated in Cohen. It's conclusive, it resolves an important question separate from the merits, and it's effectively unreviewable following final judgment. So here's the thing. There are, I guess there are at least three other circuits that have considered whether the determination of whether something qualifies under Bivens, whether there's a Bivens remedy for something, without the determination of qualified immunity, is not appealable under interlocutory, you know, as an interlocutory collateral appeal under Cohen. Why should we break from what the other circuits have done? I think that Judge Hardiman's decision in the Third Circuit Graber case, as well as Judge Timkovich's decision in the Tenth Circuit Mohammed case, illustrate the errors of those courts' reasoning. Namely, none of those courts appropriately considered the harm to the separation of powers that's implicated while a case proceeds in district court after the court extends Bivens to a new context, as happened here. But that harm isn't, I mean, it's not like the harm that was in Nixon, right? I mean, the harm here, the whole idea behind the Bivens remedy is to deter officers from engaging in, you know, constitutionally inappropriate behavior. And so if that pens a little bit longer until the district court determines the qualified immunity issue, what, I mean, why is that a serious enough harm to the separation of powers, given the purpose of the Bivens remedy in the first place? Two things, Your Honor. First, the Supreme Court has made clear that extending Bivens to a new context is a legislative act, that by taking that initiative, that itself harms the separation of powers. Right. I understand that there is, you know, a harm to the separation of powers if a Bivens remedy is wrongly extended. But that's, I think it's got to be more than that. It can't just be a harm to the separation of powers. It has to be a meaningfully bad harm, if you will, for lack of a better term, to the separation of powers while we wait until the appeal would otherwise be able to be taken. So I think you are analogizing, for example, to the political question doctrine would be instructive. That is, were a court to conclude that considering a question that is appropriately determined by the political branches is one that is able to proceed in litigation, that itself, that litigation harms the separation of powers. And I do want to return to Your Honor's point about the purpose of Bivens itself. But again, I'm sorry. So I agree there's a harm to the separation of powers. But not just any harm to the separation of powers qualifies a case for us to consider the appeal in an interlocutory status. So what is it that's so bad about the harm to the separation of powers here that takes it out of the ordinary separation of powers problem, right? I mean, because if you think about it, right, whenever a court determines a, you know, a question about whether or not a law is retroactively applicable, right, or a rule is retroactively applicable, if it decides it wrong, it might be violating the separation of powers. But, you know, we don't allow an interlocutory appeal from just any case. So what is it about the context here that makes it so harmful under the separation of powers that we can plop it into the interlocutory appeal bucket? Sure. So in Egbert, I think the Supreme Court made clear that simply extending Bivens to a new context itself places great stress on the separation of powers. And I think that's because it's worth examining what exactly a Bivens cause of action is. It's a judicially created remedy against an official in a coordinate branch of government for damages when that official is acting in her individual capacity for her official government functions. So in doing so, it both inhibits effective government functioning on a macro level and interferes with the constitutional functions of those officials on a micro level. So in many ways, I think that this Court's Johnson decision makes clear, as I think the premises of Your Honor's questions underscore, that this is the outcome of this litigation. This is in some ways a foregone conclusion. Plaintiff has no cause of action against the defendant, such that allowing the litigation to continue only requires an expense on government resources, including judicial resources. Presumably, the government will move for summary judgment if the Court dismisses this appeal. And Johnson, I think, forecloses extending Bivens to the claims that Plaintiff has alleged here. And that litigation itself burdens the separation of powers, in addition to the fact that by extending Bivens to this new context, the district court has itself recognized a new cause of action where the Supreme Court has explained that Well, I mean, we, in the Eleventh Circuit, we have previously recognized in Powell, I understand where you're coming from, that the Supreme Court has since said, you can't extend it to different areas. But it's not like the district court went out and invented some new remedy, you know, some new cause of action that it had no basis for applying. Respectfully, I think that's wrong, Your Honor, for two reasons. One, the district court never cited the two-step framework that the Supreme Court articulated in Abbasi and has reiterated in Hernandez and Egbert. That is, the district court only cited Powell for the proposition that there was a Bivens remedy, but the question of whether there could be a Bivens cause of action was not presented in Powell. And so that's one error aside. Second, I think this Court's decision in Johnson, issued just this week, underscores that Powell is no longer good law. I don't believe that Court decision ever cites Powell, implicitly recognizing that it no longer stands for any meaningful proposition as to the availability of a Bivens remedy. I do actually want to return to the premise as well that the purpose of Bivens itself is to deter officers. That may have been true when Bivens was decided in the early 1970s, but the Supreme Court's subsequent jurisprudence issuing great caution against extending Bivens to new contexts and, in the subsequent 44 years, never extending Bivens beyond Bivens itself, Carlson v. Green, and Davis v. Passman, that those purposes in some ways were part of the, quote, ancien regime of a prior era of the Supreme Court's jurisprudence, such that now the Court has consistently declined to recognize new remedies in new contexts like those presented here. Now, plaintiff's conditions of confinement claim— That's still—I mean, yes, I think that's probably true, but that doesn't change the purpose of a Bivens remedy. I mean, whether or not it's still embraced is a different question from what its purpose is. Sure, but the—here, there is no remedy. I think the plaintiff's allegations here, I think, reflect that this is a new cause of action that she doesn't have against the warden, whereas maybe Bivens itself, for a warrant of search and seizure in an individual's home in violation of the Fourth Amendment, may, you know, act to deter those law enforcement officials in that specific context. But there's no purpose for extending that remedy here, and the Supreme Court has never recognized that particular line of doctrine for recognizing new causes of action against different classes of officials like the warden here. And I think, in particular, it's worth noting that none of plaintiff's allegations speak to the warden's particular involvement with her confinement in the facility. Plaintiff's allegations, I think, speak to the existence of the conditions of confinement, of toxic mold and asbestos in this particular Federal facility, but not to the— And the fact that she had COVID. I mean, I'm not even convinced that this is being extended to a new context. So she alleges that she had COVID, the asbestos and the mold exasperated her already preexisting condition. How is that not a medical—delivered in difference to a medical condition claim? Absolutely, Your Honor. And I think, in this respect, it's worth looking to paragraphs 5, 17, and 44 of her complaint, where she does allege that she was hospitalized partially by virtue of contracting COVID-19. However, she does not allege that there was any maltreatment in the course of receiving that medical care. To the contrary, she was treated in the hospital facilities of the prison— The maltreatment is that she was still exposed to asbestos and mold and ended up hospitalized again. But those kinds of claims, which go to the conditions of confinement itself, are different from that which the Supreme Court recognized in Carlson. In Carlson, it was a specific maltreatment of a particular individual by poorly administering contraindicated treatment. None of that happened here. Rather, a plaintiff was treated for contracting a virus during a global pandemic, and there is no allegations to indicate that she suffered any maltreatment in the course of that process. Now, there may have been predicates in the facility that led to her needing to be hospitalized, but those kinds of conditions that she's alleging were improper are a different context from that which was present in Carlson, such that it would be a new claim that this court can review on an interlocutory appeal. And I think those kinds of factual differences only underscore why it's important for the court now to recognize that there's no cause of action, rather than allow the litigation to continue in district court, where, as I explained with your colleague, the outcome here is essentially a foregone conclusion. There is no Bibbins remedy because this case presents a new context. Why can't this issue be reviewed and cured on appeal from the final judgment in the underlying case? I think it's because, not to sound like a broken record, but the separation of power is implicated by recognizing a new Bibbins cause of action. To allow the litigation to proceed itself interferes with efficient government functioning and the ability of these officers to carry out their constitutionally delegated functions. In some ways, that creates a chilling effect for other prison officials who may see that this litigation is pending and their activities may be hailed into court by— Why do we care, though? I mean, if the problem is that there's toxic mold, and we know that there is because there's that report, justice report, I think it is, that confirms how bad these conditions are, why do we care if they're chilled from not correcting it? There are two responses, Your Honor. First, I think the report actually helpfully illustrates that this is the kind of case that is best left to a resolution by the political branches. In fact, the Inspector General's report has been put before Congress for further consideration, such that Congress may determine to create a cause of action. What's the bad thing that happens if we wait? I mean, you pointed to they'll be chilled. What is the bad thing that happens if they're chilled from not correcting the problem? I think it's that they are impeded from— How does that impede their law enforcement function? I think because they are increasingly cautious over how their duties may be hailed into court, particularly by pro se prisoners, as Plaintiff is here. But how does—I guess I'm having some confusion about how, you know, not placing prisoners in toxic mold conditions that cause serious illness and possibly death impedes the law enforcement function. There may be a way. It's not obvious to me, but since you're relying on it, I'm interested in hearing it. I think it's more as a more general matter that if prisoners are able to sue federal officials for the conditions in prison facilities, it's not just toxic mold and asbestos. It could also be other various kinds of conditions in those facilities, such that officials are now made liable in their individual capacities. I think that's worth noting that this is not for claims against the United States, and Plaintiff does have claims under the Federal Tort Claims Act still pending in district court. But this is for an individual damages remedy against specific federal officials, here a warden of a federal facility. And those kinds of causes of action interferes with those officials' functioning, especially because of the uncertainty while the litigation proceeds. As I indicated, it seems apparent to the government that there's no Bivens remedy here. However, for the litigation to continue, there is at least some degree of uncertainty for those officials, such that they could be held liable or there's a prospect of liability while the litigation continues. And in Will v. Halleck, I think the Supreme Court articulated that the separation of powers concerns are exactly those which would merit an interlocutory appeal to fall within the collateral order doctrine. And I understand that the separation of powers harms are somewhat abstract, but that's equally true, for example, with respect to presidential immunity that the Supreme Court recognized in Nixon v. Fitzgerald. So harm to the separation of powers by potentially holding the president liable while litigation continues is in some sense the same as seeking— It's not really, though. I mean, the president is the chief executive of the country. If a warden—I mean, I don't mean to minimize—wardens have important responsibilities and, you know, we owe them a debt for their public service. But it's not really the same thing, you know, if a warden compared to the chief executive of the United States. I mean— Sure, there is a difference in kind, but not in degree. And that is that the warden is in some sense, as you recognize, the chief executive of a prison. But my broader point is a slightly more abstract one, which is that the harm to the separation of powers adheres in each of these instances in which a cause of action is alleged for judiciary to itself extend. And the Supreme Court's decisions in Abbasi, Hernandez, and Egbert, I think, make clear that those kinds of stresses on the separation of powers are exactly those which this Court should be able to remedy on an interlocutory appeal. Thank you. Thank you, Mr. Ross. Mr. Mueller. Good morning, Regulars. Andrew Mueller on behalf of Ms. Rhonda Fleming. May I proceed? This is an interlocutory appeal of a non-final order on the government's motion to dismiss. So let me ask you a question about that, though. I mean, the government did move for qualified immunity, and the district court did not address it. And, you know, it's supposed to be addressed at the earliest opportunity. And so I'm wondering, you know, what is the signal that we send if we find there's no jurisdiction here on an issue like this where the Supreme Court has spoken in Abbasi about the importance of not finding new Bivens remedies, et cetera, if we don't point out that the district court needs to, in fact, address the qualified immunity issue when it's raised? Your Honor, the only signal you send in that case is preserve that issue on appeal. As Your Honor well knows, that was an immediately appealable issue. Nobody's disputing that today. But the government didn't appeal that issue. They could have. That was before the district court and the magistrate judges' R&R. Many of these issues were before the district court and the magistrate judges' R&R. The district court properly considered those, and what the government did or didn't do with its vested right in a qualified immunity defense is its litigation strategy. But Your Honor's not sending a signal to the public at large at all by going our way in this appeal. Now, to address three of the government's arguments head-on, I'd like to start with jurisdiction. As Your Honors know, 1291 is the rule. That's Congress' rule, and Congress penned an exception in 1292 that also the government didn't raise in this case. But this Court's opinion in Alvarez, which we cite in our brief, and countless of cases before and after that stand for one proposition, that the jurisdictional question comes first. Here we've got the Cohen third factor, right, the effective reviewability of a final order. As Your Honor mentioned, Judge Rosenbaum, three sister circuits have come out of our way on that. What's important here is why. In a jurisdictional question, the government attempts to front-load the Bivens merits. The separation of powers argument they raise is actually a merits argument on whether or not Bivens should be extended. We're not arguing today. But in fairness, the Court has said something to the effect of this is a preliminary issue or something of that nature. So, you know, that's why we see the dissents from Judges Hardiman and Timkovich. Your Honor, I'd like to take those dissents head-on. I think Judge Hardiman and Judge Timkovich, that's Judge Hardiman and Graber and Judge Timkovich in the recent Mohammed case that we informed this Court about in our 28J letter, those are important dissents to look at because, number one, they are minority opinions of those panels. Number two, they also front-load the merits issues of Bivens in a way that the majority in each case disagrees with. And possibly most importantly, Your Honor, Judge Timkovich and Judge Hardiman, I read their dissents to be dissents concerned with expediency, with convenience. In fact, Mr. Ross found out that this would be an inconvenience for the government. But, Your Honor, as the 28J letter the government filed yesterday, Johnson, that case from this Court as of two days ago, shows that kind of expedience is not what Bivens is designed for. Bivens is designed to hold the government's feet to the fire when bad actors are acting badly. It's different in character and it's different because of the qualified immunity. And that's the first point where Mr. Ross' arguments fail. Your Honor's qualified immunity, and I think, Judge Rosenbaum, you were getting at this, that is a vested right for the government. And this Court's opinion in Smile Direct Club v. Battle explains why this is important. There are certain categories of rights, as this Court said in that case, that if not vindicated at the outset, are lost forever. And that's what qualified immunity is. Qualified immunity is a vested right when the government has not acted in a way that is clearly unconstitutional, that it doesn't have to sit through trial. That is so different from a 12B6 motion, which is what we have here. We have an issue of the framing of the pleadings. We even disagree about whether my client pleaded, as the District Court found, a deliberate indifference claim, or as Mr. Ross argues today in his briefs, a conditions of confinement claim, which just isn't before this Court. I'm sorry. I mean, the complaint is very heavy on conditions, and some could interpret it with COVID thrown in there as a bootstrap. Your Honor, you're absolutely right. And, in fact, the conditions were abysmal in Tallahassee. They've been abysmal since the Powell case, which happened 40 years ago, that also was at the same prison, Your Honor. So the friable asbestos has been an issue there for decades. The mold has been an issue there for decades. We're not disputing that. But Your Honor said it best a moment ago in your questioning, it's what happened after the conditions, right? So take a look at Carlson. Take a look at Powell. There you have chronic issues in Carlson, a chronic respiratory condition that was known to the warden, diagnosed by medical personnel, and not treated. The cause of it, the effect of it, those are the words. But the animating features of both cases, Carlson and our case, are what matters. So that's why we actually went on the merits issue. But just going back to the government's arguments, I want to point this court to Will. There's clear dictum in Will. That's true. The problem is it's dicta, and it comes out before a bossy, right? Yes, Your Honor. So, I mean, true, we've said there's dicta, and then there's Supreme Court dicta. But then there's a bossy. True. So, I mean, what do we do with that? Your Honor is so electable about dicta. Sorry about that. No, no, Your Honor. It is true, and that is the law of this circuit, that Supreme Court dicta is not something to drive by, as the government says in its brief. I think what matters here most, Your Honor, is that Will was decided before Egbert and Abassi, and the Supreme Court didn't do anything about Will in those cases. But does it need to do anything if it's dicta? Well, Your Honor, it wouldn't have—let me answer your question this way. It wouldn't have done anything because those cases are Bivens, merits, extension cases anyway. Will is a collateral order doctrine case. It's the only one from the Supreme Court that we're arguing about. That actually brings me to a point. The government cites in its brief Wilkie and Hernandez, two cases that had Bivens issues and attendant qualified immunity concerns and questions that were raised. Those questions, Your Honors, that's what differentiates this case from Will, because Wilkie and Hernandez, that was silence. The court didn't address, I think as Your Honor was getting at in the Bivens context, it didn't address the collateral order appealability of a Bivens issue. So we don't know anything about that from what the Supreme Court said in those cases. That's Supreme Court silence, and the government wants you to prefer Supreme Court silence to clear dictum on exactly the issue before this court. And I just would like to read what Will says. I'm sure Your Honors have read the case, but I think it's important, and it gets right at the heart of what the government's arguing. If simply abbreviating litigation troublesome to government employees were enough for co-entreatment, collateral order appeal would be a matter of right whenever a federal officer lost an FTCA motion or a motion to dismiss a Bivens claim. That's our case. That's what we have right here, right now. And the government can't get around a clear statement from the Supreme Court and Will by citing silence in Wilkie and Hernandez. That just doesn't make sense. Now, Your Honors, on the government's separation of powers point, this is really a separation of powers for thee but not for me argument, and that gets back to the point I was making about front-loading the Bivens issue. Your Honors, asserting, excuse me, assuming jurisdiction over a vast new category of claims, of orders that are non-final violates the separation of powers. Got it. There you are. Yes, it is a violation. It's not just a concern as we have in the Bivens extension context. So I think that's the difference that I hear, Your Honors. We should also look, I think, at the classes of items that get collateral order review and those that don't. What gets collateral order review? Denials of qualified immunity, denials of sovereign immunity, 11th Amendment immunity. We saw recently in the U.S. versus Trump case of the D.C. Circuit, restrictions on speech in the criminal context. Those all get qualified, excuse me, collateral order doctrine review because those are all constitutionally rooted rights that the moment they're not protected, they're gone. When you restrict someone's right to speech, that is done, right? That's a finite action. That's what's different than what you see in a 12b6 context like we have here, what you see in a motion to dismiss based on race judicata or collateral estoppel. You see all these different categories that do not get collateral order review, and that's because they're not the kinds of things that can't be relitigated or rehashed. And that's what brings us back to the Cohen third factor, that that is the crux of this case. This is an effectively reviewable order, and three circuits have said as much. They've said we can address this at the end of trial. Your Honors, I just want to take a moment because the government filed this 28J letter yesterday and brought Johnson to this court's attention, and despite a couple of points on the Bivens' merits in the government's favor, I want to break down Johnson in a couple ways. First, Johnson stands for the same proposition I was arguing earlier, that Supreme Court silence tells us nothing. We can't divine anything from it. In fact, Johnson does the hard work for me of collecting 200 years of Supreme Court precedent and breaking it down to say that a question lurking in the background and not addressed directly or in dicta has no precedential value. That's why the Wilkie and Hernandez cases the government cites so heavily in its brief and response just don't have any effect here. They have no precedential value whatsoever. And Johnson, the case the government brought to our attention yesterday, tells us as much. But also on the Bivens' merits, Your Honors, Johnson is, in my opinion, a very helpful case for us because it highlights, and I think if it's not a concession that this is a deliberate indifference to serious medical needs claim, it comes down to what the government has, to conceding that this is a deliberate indifference to serious medical needs being framed for this court, not a conditions of confinement claim. And I think by looking at Johnson and highlighting that for us, we can see exactly what a Bivens' extension looks like in practice. And just two days ago, this court told us that if there are very different sorts of injuries in Johnson, there were acute physical injuries to the plaintiff's hands and feet, that's something that is a Bivens' extension. If there are different constitutional rights at play in Johnson, that was a 14th Amendment issue and a deliberate indifference issue, not an 8th Amendment issue like in our case in Carlson. That's a Bivens' extension. We don't have a Bivens' extension here. That actually makes our case much stronger than the other sister circuit cases in Himmelreich in the 6th Circuit, Greger in the 3rd Circuit, and Mohammed in the 10th Circuit, because in all of those cases, either explicitly or impliedly, the appellee conceded that there was a Bivens' extension, which would cause some of these problems with the merits. But we know that, yes, Bivens' has been curtailed over time. It's been whittled down, but Bivens' isn't dead. Egbert and Abbasi leave room for Bivens' to exist, and they leave room in the Carlson context. Powell might not be the case that wins for us, but it's an important case for framing up that this deliberate indifference, a serious medical need issue, is something that's been recognized for a long time, and it gets us that much closer to Carlson. I think Johnson actually pushes us over the edge. So for all these reasons, Your Honors, we'd respectfully request that you dismiss this appeal, and if Your Honors decide not to dismiss this appeal, but to exercise jurisdiction where none exists, that we'd ask that you please find that this is, in fact, not an extension of Bivens', as we argue. Thank you. All right. Thank you, Mr. Mueller. Mr. Ross, you reserve some time for rebuttal. Thank you, Your Honor. Three quick points, starting with a discussion about dicta in the Supreme Court, analogizing Bivens' claims to qualified immunity, and closing with a few other instances in which the Supreme Court has recognized orders would be immediately appealable under the collateral order doctrine. First, the discussion about dicta. So plaintiff points to the dicta and will, but conveniently omits the final clause of that dicta, in which the court explained appeal would be a matter of right whenever the government lost a motion to dismiss under the Federal Tort Claims Act, or a federal officer lost one on a Bivens' action, or a state official was in that position in a case under 42 U.S.C. 1983. That is, the Supreme Court in will was analogizing motions to dismiss that would not be immediately appealable for things like improper venue, no personal jurisdiction, or for estoppel arguments. But it was taking as a given that there was a cause of action. Here, there's a separate question, which is whether there is a judicially inferred cause of action. And I think that brings the other strand of dicta that the plaintiff has invoked irrelevant here, and that's the discussion in Wilkie and Hartman, as well as the Supreme Court's Bivens' precedence in Abbasi, Hernandez, and Egbert. Namely, in Wilkie and Hartman, the Supreme Court recognized that even considering the element of a cause of action could be considered on an interlocutory appeal. The Supreme Court has also made clear in Hernandez in 2017 saying that the existence of a cause of action is antecedent to the question of qualified immunity, and in 2020 in Hernandez saying that it is imprudent to consider the litigation to allow the litigation to go forward when there is no cause of action. So when you merge these two lines of precedent in Wilkie and Hartman and in Abbasi, Hernandez, and Egbert, it makes clear that the Supreme Court would have, I think, permitted the interlocutory appeal of denial of a motion to dismiss extending Bivens to a new context. And that brings me to how Bivens is similar to qualified immunity. As plaintiff recognizes, the Supreme Court has long held that an officer can appeal the denial of qualified immunity. Go ahead. Sorry, I just wanted to ask you, I mean, your colleague says, you know, if you wanted us to address the qualified immunity issue, you could have appealed the district court's failure to address it. What is your thought on that? The government opted not to appeal qualified immunity in this instance, Your Honor, possibly to raise it again in district court. There are a number of reasons why the government may have chosen to do so. Whether it is sort of irrelevant. On the other hand, if you had, there'd be no question that we had jurisdiction. I agree. So, you know. But I don't think that should reflect whether. No, I agree. It's an independent question as to whether or not there's jurisdiction under Bivens. But, you know. Yes, I understand. But I will just return to the point that Bivens in some ways, extending Bivens to a new context is similar to the denial of qualified immunity in that it implicates officers' ability to carry out their constitutionally delegated functions. And those are the same concerns that are relevant here. And, in fact, they're completely different from other instances in which the Supreme Court has recognized orders would be appealable under the collateral order doctrine. For example, in Eisen, where the court held that allocating costs for class members in a class action is immediately appealable. As in Cohen itself, where the court determined that the applicability of a New Jersey state securities law statute would be appealable. In each of those cases, the determination of the merits question underlying litigation would not have precluded review of the substantive questions that were raised under collateral order. Just as here, the Bivens question is not reviewable following final judgment because it implicates important questions about the separation of powers. The Supreme Court recognized in Acts on Enterprises v. Federal Trade Commission cannot be remediated retroactively. Again, I'm over my time, but absent additional questions, we urge the court to reverse the district court's holding, extending Bivens to a new context, and re-manage those claims to be dismissed. All right. Thank you. And I'll note that the case was very well argued on both sides, and the court thanks you for your arguments. Go ahead with the next one. Okay. And the next case.